# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| NEILL SAMUELL, | Case No.: 2:18-cv-00111-APG-DJA |
| Plaintiff | **Order Denying Motion for Summary Judgment and Granting Motion to Extend Time** |
| v. | |
| LT. OWENS, et al., | [ECF Nos. 53, 76] |
| Defendants | |

Plaintiff Neill Samuell was a prisoner at High Desert State Prison (HDSP).  His only remaining claim is for Eighth Amendment excessive force under 42 U.S.C. § 1983 against HDSP correctional officers Paul Araujo and Alejandro Avelar.  The claim arises from an incident at HDSP where he objected to the manner in which Araujo and Avelar searched his cell.  He contends that after he refused to lock down as ordered after the search, Araujo, Avelar, and another corrections officer named Julio Corral-Lagarda[1] attacked him without warning and without directing him to submit to handcuffs.  He asserts they twisted his arms up behind him and slammed his head into the wall.

Araujo and Avelar move for summary judgment, arguing that Samuell's claim fails because he cannot identify which of the three officers allegedly slammed his head into the wall.  They contend that Samuell must show each defendant personally participated in the violation and there is no basis for group liability.  They also argue they did not use excessive force because the force they used was de minimis and reasonably necessary to maintain order given Samuell's

---

[1] I previously dismissed Samuell's claims against Corral-Lagarda without prejudice for failure to timely serve. ECF No. 73.  I also dismissed Samuell's claims against Lt. Owens for failure to state a claim. ECF No. 4 at 7.

refusal to obey commands and his aggressive actions.  Alternatively, they contend they are entitled to qualified immunity.

Samuell responds by admitting that he did not follow orders to lock down, but he contends that he merely asked to speak to a sergeant or lieutenant and was not asked to submit to handcuffing before the three officers attacked him.  He states that he cannot identify which officer slammed his head into the wall because the officers were behind him and the defendants did not preserve and produce video surveillance that would have shown the incident.  He argues the force used was excessive, and any reasonable officer under the circumstances would have known that, because the officers could not use physical force in response to his verbal request to speak to a sergeant or lieutenant.  Samuell separately requests an extension of time to litigate this case given his anticipated release from prison.

I deny the defendants' motion because genuine disputes remain regarding their participation in the use of unjustified force, which any reasonable correctional officer would know is unlawful.  I grant Samuell's motion to extend time and direct him to update his address with the court.

**I.  ANALYSIS**

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence

of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial.").  I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

To establish liability under 42 U.S.C. § 1983, a plaintiff must show the deprivation of a right secured by the Constitution and laws of the United States and must show that the deprivation was committed by a person acting under color of state law. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).  The defendants do not contest that they acted under color of law.  Thus, the dispute centers on whether they violated Samuell's constitutional rights.

The parties also dispute whether the defendants are entitled to qualified immunity.  To allay the "risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties," government officials performing discretionary functions may be entitled to qualified immunity for claims made under § 1983. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  In ruling on a qualified immunity defense, I consider whether the evidence viewed in the light most favorable to the nonmoving party shows the defendant's conduct violated a constitutional right. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).  If the plaintiff has shown the defendant violated a constitutional right, I then must determine whether that right was clearly established. *Id.*

A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Wilkins v. City of Oakland*, 350 F.3d 949, 954 (9th Cir. 2003) (emphasis omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). I make this second inquiry "in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. An officer will be entitled to qualified immunity even if he was mistaken in his belief that his conduct was lawful, so long as that belief was reasonable. *Wilkins*, 350 F.3d at 955.

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishment. U.S. Const. amend. VIII. "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quotation omitted). To establish an Eighth Amendment violation based on use of force, a plaintiff must show the amount of force used was more than de minimis or otherwise involved force "repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (quotation omitted). The inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. Several factors guide the determination of whether force was applied maliciously and sadistically to cause harm, including:

> (1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response.

*Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

Unsurprisingly, the parties' versions of the incident differ. Araujo and Avelar aver that Samuell was upset, looked like he wanted to fight, refused orders to return to his cell, refused to

4

comply with Avelar's command to submit to restraints, pulled away from Avelar, and then approached Avelar with his fists balled up and his chest puffed out. ECF Nos. 53-2; 53-3. They contend they then took control of his arms at the wrists and biceps, walked him to the wall, placed him against the wall, and handcuffed him. *Id.*

Samuell admits that he disobeyed orders to lock down, but contends he merely asked to speak to a sergeant or lieutenant so he could complain and document the state of his cell following the defendants' search of it. ECF Nos. 5[2] at 4; 69-2 at 79. He denies that anyone told him to turn around or submit to restraints, and he states that he would have done so had anyone asked him. *Id.* Instead, he contends all three officers suddenly rushed him, twisted his arms behind him and lifted them up "so high and forceful[ly] that [he] thought they were trying to dislocate [his] shoulder," handcuffed him, moved him to the wall, and then slammed his head against the wall. *Id.*

Although the defendants argue Samuell's claim fails because he cannot identify who slammed his head against the wall, the claim does not rest only on the force applied to his head. He also contends the defendants used excessive and unjustified force in grabbing his arms and twisting them behind him, lifting them up so high and forcefully that he thought his shoulders would be dislocated. Araujo and Avelar identify themselves as the ones who took hold of Samuell's arms. And, a reasonable jury could find that even if Corral was the one who slammed Samuell's head into the wall, Araujo and Avelar were integral participants in that alleged violation. *See Lolli v. Cnty. of Orange*, 351 F.3d 410, 417 (9th Cir. 2003) (holding that the plaintiff presented evidence from which a jury could find that deputies participated in beating

---

[2] "A verified complaint may be used as an opposing affidavit under Rule 56" so long as it is "based on personal knowledge and set[s] forth specific facts admissible in evidence." *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995).

him even though he could not "identify precisely which officer delivered which alleged blow or use of force" where he "relied on the deputies' own admissions that they were involved in the altercation and that they exerted some physical force on him to create the necessary inference that the deputies were integral participants" (quotation omitted)); *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (stating officer who assisted in handcuffing the plaintiff was "instrumental in the officers gaining control" of the plaintiff and thus was an integral participant in the use of hobble restraints).

Because I must view the facts in the light most favorable to Samuell, genuine disputes remain regarding whether the defendants' use of force was necessary, whether the defendants reasonably perceived a threat, or whether they made any efforts to temper the severity of their response. Although the defendants focus on the de minimis nature of Samuell's injuries, that is only part of the analysis. Even if his injuries were de minimis, genuine disputes remain about whether the use of force was unprovoked and therefore malicious and sadistic. *See Hudson*, 503 U.S. at 7 ("The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it."); *Felix v. McCarthy*, 939 F.2d 699, 702 (9th Cir. 1991) (stating that "it is not the degree of injury which makes out a violation of the eighth amendment. Rather, it is the use of official force or authority that is intentional, unjustified, brutal and offensive to human dignity." (quotation omitted)). The reasonableness of the force used is ordinarily a question of fact for the jury because such cases, like this one, "almost always turn on a jury's credibility determinations." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002). Samuell has set forth evidence sufficient to raise a genuine dispute for trial as to whether Araujo and Avelar used force "maliciously and sadistically" rather than as part of a "good-faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 7.

For the same reasons, the defendants are not entitled to qualified immunity.  At the time of this incident, a reasonable correctional officer would know he could not engage in an unprovoked physical attack on an inmate. *See Felix*, 939 F.2d at 701.  I therefore deny the defendants' motion for summary judgment.

Samuell moved for an extension of time to litigate this action because his release from HDSP was imminent and he needed time to locate housing and employment.  The defendants did not oppose.  I grant the request.  By May 31, 2021, Samuell must update his address with the court and contact the defendants for the purpose of preparing a joint proposed pretrial order.  The joint proposed pretrial order is due 30 days after Samuell first contacts the defendants.  Failure to comply will result in dismissal of this case with prejudice.

## II.  CONCLUSION

I THEREFORE ORDER the defendants' motion for summary judgment **(ECF No. 53) is DENIED**.

I FURTHER ORDER that plaintiff Neill Samuell's motion to extend time **(ECF No. 76) is GRANTED**.  By May 31, 2021, Samuell must update his address with the court and contact the defendants for the purpose of preparing a joint proposed pretrial order.  The joint proposed pretrial order is due 30 days after Samuell first contacts the defendants.  Failure to comply will result in dismissal of this case with prejudice.

DATED this 11th day of March, 2021.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE